UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**HEIDI RADOSEVICH,**
           **Plaintiff,**

      v.                                                                  Case No. 22-CV-763

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,**
           **Defendant.**

## DECISION AND ORDER

**1.**     **Introduction**

Alleging she has been disabled since July 22, 2009 (Tr. 1286), plaintiff Heidi Radosevich seeks disability insurance benefits. Her date last insured was December 31, 2014. (Tr. 1286-87.) After her application was denied initially (Tr. 116-19) and upon reconsideration (Tr. 120-24), a hearing was held before Administrative Law Judge (ALJ) Barry Robinson on November 17, 2014 (Tr. 56-88). On January 26, 2015, ALJ Robinson issued a written decision concluding she was not disabled. (Tr. 30-50.) After the Appeals Council denied Radosevich's request for review on June 20, 2016 (Tr. 3-6), she appealed to this court (Tr. 1361-69).

On September 18, 2017, this court affirmed ALJ Robinson's decision. (Tr. 1370-1404.) Radosevich appealed to the United States Court of Appeals for the Seventh Circuit.

(Tr. 1406-09.) On January 22, 2019, the Seventh Circuit reversed and remanded the case to this court with instructions to remand the case to the agency for further proceedings. (Tr. 1410-14.) Following a supplemental hearing held on February 14, 2022 (Tr. 1307-58), ALJ Patrick Berigan issued a written decision on March 4, 2022, concluding that Radosevich was not disabled (Tr. 1286-99). After the Appeals Council did not assume jurisdiction, ALJ Berigan's decision became final and Radosevich filed this action. (ECF No. 1.) All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Radosevich "did not engage in substantial gainful activity during the period from her alleged onset date of July 22, 2009, through her date last insured of December 31, 2014." (Tr. 1288.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Radosevich has the following severe

impairments: fibromyalgia, degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and attention deficit hyperactivity disorder (ADHD). (Tr. 1288.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Radosevich's impairments did not meet or medically equal a listed impairment.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Radosevich has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs;

and never have exposure to unprotected heights or unprotected moving machinery. She is limited to simple tasks requiring no more than two hours of continuous concentration; a low-stress job only, defined as having only occasional decisionmaking (sic) required and occasional changes in the work setting; occasional interaction with the public; and frequent interaction with coworkers or supervisors.

(Tr. 1291.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Radosevich "was unable to perform any past relevant work." (Tr. 1298.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step the ALJ concluded that there were jobs that Radosevich could perform, including housekeeper/cleaner (Dictionary of Occupational Titles (DOT) Number 323.687-014); small parts assembler II (DOT Number 739.687-030); and marker (DOT Number 209.587-034). Therefore, she was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. Analysis

Radosevich argues that the ALJ's RFC finding and the hypothetical posed to the vocational expert were flawed because he failed to account for her moderate limitations in concentration, persistence, and pace. She also argues that the ALJ erred in his evaluation of certain medical opinions and her subjective symptoms.

   4.1.   **Concentration, Persistence, and Pace**

ALJ Robinson (the ALJ who initially reviewed and denied Radosevich's claim to benefits in 2015) found that Radosevich had moderate limitations in concentration, persistence, and pace (CPP). (Tr. 39-40.) To account for her moderate CPP limitations, he restricted her to "simple, work-related decisions" with "few, if any, workplace changes."

(Tr. 40-41.) During Radosevich's administrative hearing ALJ Robinson asked a vocational expert whether an individual requiring those work restrictions would be able to perform any jobs available in the national economy. (Tr. 80.) The vocational expert testified that there were jobs in the national economy available for an individual requiring those work restrictions. (Tr. 80-81.) From this testimony ALJ Robinson concluded that Radosevich was not disabled. (Tr. 49-50.)

In remanding Radosevich's case for further agency proceedings (Tr. 1414), the Seventh Circuit explained that

> the hypothetical question posed by the ALJ to the vocational expert was incomplete because it did not include any restrictions in concentration, persistence, or pace—restrictions that the ALJ acknowledged Radosevich to have suffered moderately. The hypothetical included only restrictions to "simple, work-related decisions" with "few, if any, workplace changes," so it reflected the limitations in Radosevich's abilities to carry out complex or detailed instructions and cope with changes. And although Radosevich may have the mental capacity to complete a single, simple task, the hypothetical did not capture the limitation in her ability to execute that simple task over an extended time. Therefore, we are left with a disconnect between the limitations identified by the doctors and the ALJ's hypothetical to the vocational expert.

(Tr. 1413-14.)

Presented with the same evidence that was before ALJ Robinson (Tr. 1297), the ALJ on remand, ALJ Berigan, also found that Radosevich had a moderate CPP limitation (Tr. 1290). To account for the limitation, ALJ Berigan assessed an RFC "limit[ing] [her] to simple tasks requiring no more than two hours of continuous concentration; a low stress job …, defined as having only occasional decisionmaking (sic) required and occasional

changes in the work setting." (Tr. 1291.) At Radosevich's supplemental hearing, ALJ Berigan presented these restrictions to a vocational expert, who determined that there were jobs in the national economy for an individual requiring such work restrictions to perform. (Tr. 1338-39.) From this testimony ALJ Berigan concluded that Radosevich was not disabled. (Tr. 1299.)

Radosevich argues that the RFC finding and hypothetical "fail[] to account for [her] limitations in [CPP]." (ECF No. 12 at 13.) Specifically, Radosevich argues that the RFC finding and hypothetical—like ALJ Robinson's RFC finding and hypothetical—fail to capture the limitation in her ability to execute a simple task over an extended time.

Radosevich first argues that the only difference between ALJ Robinson's RFC finding and ALJ Berigan's RFC finding is that ALJ Berigan's specifies that "simple work" require "no more than two hours of continuous concentration." (ECF No. 12 at 12 (citing Tr. 1291).) The Commissioner responds—albeit in a footnote—that the social restrictions in ALJ Berigan's RFC finding (restrictions to "occasional interaction with the public; and frequent interaction with coworkers or supervisors") also should be construed to address Radosevich's moderate CPP limitations. (ECF No. 17 at 13 n.5.) Because "less frequent interaction with others would logically permit a worker to maintain greater attention and concentration[,] …. [t]he ALJ reasonably restricted [Radosevich's] social interactions to account for her limitations in [CPP]." (ECF No. 17 at 13 n.5.)

7

ALJ Berigan's decision does not support the Commissioner's interpretation that the social restrictions account for Radosevich's moderate CPP limitations. ALJ Berigan explained that his RFC finding accounted for Radosevich's limited "ability to concentrate and to adapt to changes or stressors" (her CPP limitations) "by limiting her to simple tasks requiring no more than two hours of continuous concentration and to jobs requiring no more than occasional decisionmaking (sic) or occasional changes in the workplace" (the mental restrictions assessed in the RFC finding) (Tr. 1297.) He does not suggest that the social restrictions also account for Radosevich's CPP limitations. (Tr. 1291-98.) Rather, the logical interpretation is that the social restrictions account for her mild social limitations. (Tr. 1290.) Moreover, the Commissioner fails to direct the court's attention to a case where social restrictions were construed to account for a claimant's moderate CPP limitations. (ECF No. 17 at 13.) As such, the court will not construe the social restrictions to account for Radosevich's moderate CPP limitations.

It follows that the only CPP-related restriction in ALJ Berigan's RFC finding—beyond what ALJ Robinson included in his RFC finding—is that simple tasks involve "no more than two hours of continuous concentration." (*Compare* Tr. 40-41, *with* Tr. 1291.) However, given that the typical worker—with no CPP limitation—takes a break every two hours, it is uncertain whether a restriction to simple tasks requiring no more than two hours of continuous concentration would ever adequately account for a claimant's moderate CPP limitation. Indeed, courts in this circuit have concluded that a restriction

to two-hour segments of concentration is no limitation at all. *See, e.g.*, *Jason M. v. Kijakazi*, No. 20-cv-3121, 2022 WL 2071096, at *8 (S.D. Ind. June 9, 2022) ("'[N]ormal breaks occur every two hours during a regular 8-[hour] workday,' so a break every two hours, without further description, is not a limitation to the normal workday." (quoting *Warren v. Colvin*, No. 12 C 3298, 2013 WL 1196603, at *5 (N.D. Ill. Mar. 22, 2013))); *Amy R. v. Kijakazi*, No. 21-cv-260, 2022 WL 796332, at *4 (S.D. Ind. Mar. 15, 2022) ("[T]he ALJ's determination that Claimant could 'sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday' essentially amounts to no limitation at all. The Commissioner has previously noted that 'normal breaks occur every two hours during a regular 8-hour workday.' … It therefore does not make sense that Claimant, who has moderate limitations in her ability to maintain attention and concentration, 'would require the same frequency of breaks as a typical worker.'" (internal citations omitted)).

The Commissioner offers two cases to support her contention that a restriction to simple tasks requiring no more than two hours of continuous concentration is an actual restriction, adequate to address a moderate CPP limitation. (ECF No. 17 at 14.) In both cases the presiding ALJ restricted the claimant with a moderate CPP limitation to—among other things—two-hour segments of concentration. *Gonzales v. Kijakazi*, No. 21-CV-645, 2022 WL 4533857, at *3 (E.D. Wis. Sept. 28, 2022), *appeal docketed*, No. 21-3135 (7th Cir. Nov. 28, 2022); *Star v. Kijakazi*, No. 21-CV-755, 2022 WL 4129716, at *3 (E.D. Wis. Sept. 12, 2022). And in each case the district court upheld the ALJ's RFC finding. *Gonzales*, 2022

WL 4533857, at *7; *Star*, 2022 WL 4129716, at *10. Unlike here, however, neither claimant argued that a restriction to two-hour segments of concentration is no limitation at all. *See Gonzales*, 2022 WL 4533857; *Star*, 2022 WL 4129716. Nor did the court in either case address any caselaw finding that a restriction limiting a claimant to two-hour segments of concentration is not an actual limitation sufficient to address a claimant's moderate CPP limitations. *See Gonzales*, 2022 WL 4533857; *Star*, 2022 WL 4129716.

The court need not decide whether a restriction to simple tasks requiring no more than two hours of continuous concentration might—in some cases—adequately address a claimant's moderate CPP limitation. In *this* case, the ALJ failed to explain *why* that specific restriction was appropriate for Radosevich. The ALJ must "build a logical bridge from the evidence to his conclusions," *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009), which includes explaining his RFC conclusions and supporting those conclusions with evidence from the record. SSR 96-8p ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence").

The ALJ failed to explain how a restriction to "simple tasks requiring no more than two hours of continuous concentration" accounted for Radosevich's ability to perform a simple task over an extended period of time. Moreover, he failed to explain what evidence in the record supported his conclusion that Radosevich could—with her moderate CPP limitation—maintain concentration for two hours at a time. (Tr. 1283-99.)

10
Case 1:22-cv-00763-WED   Filed 03/31/23   Page 10 of 20   Document 19

Courts in this circuit have rejected RFC findings that, by restricting a claimant to two-hour segments of concentration, purport to account for a claimant's moderate CPP limitations where the ALJ failed to explain what evidence in the record supported that specific restriction. *See, e.g.*, *Brian P. v. Saul*, No. 18 C 3498, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into a finding that [the claimant] can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals."); *Kelly v. Colvin*, No. 14-cv-624, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("[T]he RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time."). As in those cases, the ALJ here failed to provide a logical bridge between the record evidence and his conclusion that a restriction to simple tasks requiring no more than two hours of continuous concentration adequately addresses Radosevich's moderate CPP limitation.

Further remand is necessary so that the ALJ can explain how his RFC finding properly accounts for Radosevich's moderate CPP limitations—specifically, "the limitation in her ability to execute [a] simple task over an extended time." If the ALJ continues to maintain that a restriction to simple tasks requiring no more than two hours of continuous concentration adequately addresses Radosevich's moderate CPP limitation, he must explain how he concluded that Radosevich could—with her moderate CPP limitation—maintain concentration for that amount of time.

### 4.2. Opinion Evidence

The Seventh Circuit found that the hypothetical ALJ Robinson posed to the vocational expert did not account for the medical opinions documenting Radosevich's moderate CPP limitations—opinions that ALJ Robinson found well-supported and gave significant weight. (Tr. 1413-14.) The agency's consultative examining psychologist, Dr. Steve Krawiec, provided one of those medical opinions (Tr. 1016), of which the Seventh Circuit gave the following account:

> After Radosevich applied for Disability Insurance Benefits in 2012, she underwent a psychological evaluation with Dr. Steve Krawiec, the agency's expert, who determined that her depression could interfere with her ability to work—specifically, her ability to focus, to persist at tasks, and to maintain an adequate pace. Dr. Krawiec also concluded that any heightened anxiety in the workplace could interfere with her ability to focus on and carry out responsibilities, and he advised against any workplace changes or stressors.

(Tr. 1411.)

Like ALJ Robinson, ALJ Berigan also found Krawiec's opinion "well-supported by his objective mental status findings" and "by the treatment notes." (Tr. 1297.) And, because Krawiec "had the opportunity to personally examine" Radosevich, ALJ Berigan also gave Krawiec's opinion "significant weight." (Tr. 1297.)

The ALJ "is required to build a logical bridge from the evidence to his conclusions." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a

remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Despite attributing "significant weight" to Krawiec's "well-supported" findings—which included his opinion that Radosevich's moderate CPP limitations could interfere with her ability to work (Tr. 1016, 1297)—ALJ Berigan failed to explain how Krawiec's findings regarding Radosevich's moderate CPP limitations translate into a restriction to simple tasks requiring no more than two hours of continuous concentration. Krawiec did not, for example, opine that Radosevich could maintain concentration for two hours at a time. (Tr. 1016.) As such, on remand the ALJ must provide the requisite "logical bridge" between Krawiec's findings regarding Radosevich's CPP limitations and the restrictions in the RFC to allow for meaningful review of the RFC finding.

The Seventh Circuit's order also discussed Dr. Spear's and Dr. Snyder's findings regarding Radosevich's moderate CPP limitations:

> In April and September 2013, reviewing psychologists Drs. Jack Spear and Darrell Snyder, two agency psychological experts, reviewed Radosevich's records and, like Dr. Krawiec, found her moderately limited in various elements of concentration, persistence, and pace. Dr. Spear found that her depression and ADD would hinder her ability to maintain attention and concentration for extended periods and to perform activities within a schedule and maintain regular attendance. And Dr. Snyder found that her ADD impeded her sustained concentration and also that she would have difficulty maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance. Dr. Snyder further concluded that Radosevich would have difficulty remembering and carrying out complex tasks but that she could do routine, repetitive tasks of one or two steps.

> Concerning Radosevich's residual mental functioning capacity, Drs. Spears and Snyder opined that she was not significantly limited in her ability to carry out "very short and simple instructions" and "make simple work-related decisions." But both identified three areas where she was limited: (1) carrying out complex or detailed instructions; (2) coping with changes; and (3) maintaining concentration for an extended period so that she could perform tasks within a schedule.

(Tr. 1411-12.)

While ALJ Berigan gave "significant weight" to Spear's and Snyder's finding that Radosevich "has the ability to sustain concentration and carry out routine, repetitive tasks of one to two steps" (Tr. 1297), he did not address any of their other findings regarding Radosevich's moderate CPP limitations, let alone explain how (or why) the RFC was (or was not) intended to account for those findings. (Tr. 97, 11-12). On remand, the ALJ must provide a logical bridge between Spear's and Snyder's findings regarding Radosevich's moderate CPP limitations and the restrictions in the RFC finding.

### 4.3. Symptom Severity

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform

work-related activities." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

Using frequently employed boilerplate, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

15
Case 1:22-cv-00763-WED   Filed 03/31/23   Page 15 of 20   Document 19

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 1292.)

The ALJ provided a lengthy discussion of Radosevich's mental status examinations documenting normal mental findings, abnormal findings, and positive and negative responses to specific medications. (Tr. 1295-96.) Radosevich argues that the ALJ's discussion of the objective medical evidence ignores that severe mental conditions often involve fluctuating symptoms, and that normal mental findings and positive responses to certain medications "[are] not inconsistent with a debilitating condition." (ECF No. 12 at 17.)

The Commissioner does not dispute that Radosevich's mental impairments resulted in fluctuating symptoms. (ECF No. 17 at 16.) The Commissioner also concedes that the ALJ, in analyzing Radosevich's subjective symptoms, noted "many normal mental status findings on examination, as well as some abnormalities." (ECF No. 17 at 16.) But the Commissioner argues that Radosevich "does not allege the ALJ overlooked or misconstrued any objective medical evidence in assessing her subjective symptoms." (ECF No. 17 at 17.)

The ALJ noted objective medical evidence supporting Radosevich's claims of disabling mental symptoms, as well as objective medical evidence cutting against such claims. For example, he observed that during a July 2008 examination Radosevich was tearful, and that she reported worsening mental health symptoms, severe depression, and

poor sleep. (Tr. 1295.) But he also noted that during an October 2009 treatment visit, Radosevich's provider found that her depression was stable and that her medication was working. (Tr. 1295.) He further noted that during a February 2010 examination Radosevich "denied any anxiety, depression, or mania, indicating that her medication was adequately controlling her symptoms," but that in December 2010 she "reported significant depression symptoms, including social avoidance, poor sleep, forgetfulness, and crying spells." (Tr. 1295.) The ALJ's decision discusses other treatment notes documenting Radosevich's reported symptoms—improvements and reversals alike— and her varying success with different medications. Indeed, it does not appear that he overlooked any objective medical evidence in assessing Radosevich's subjective symptoms, nor does Radosevich contend that he did so.

But it is not enough for an ALJ to merely discuss the objective medical evidence in a claimant's treatment history alongside her reported symptoms; he must provide "specific reasons for the weight given to the individual's symptoms." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *see also* SSR 16-3p. He must explain his "decision to credit some evidence over the contrary evidence, such that [a reviewing court] could understand [his] logical bridge between the evidence and the conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Having an ALJ provide this explanation takes on additional importance when a claimant is suffering from mental impairments. *Cf. Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

While there are treatment notes in the record tending to support the ALJ's conclusion that Radosevich's symptoms were not as severe as alleged, there are also treatment notes documenting reports of disabling mental impairments which support her symptom allegations. And while the ALJ discussed both in his decision, he failed to explain why he credited the positive treatment notes over Radosevich's reports of disabling mental symptoms—symptoms that seemingly persisted despite intermittent success with medication.

Indeed, the ALJ's determination that Radosevich's symptoms were not as severe as alleged appears to rely on "snapshots" of Radosevich's condition, taken from treatment visits during what were likely her "better days." *See Meuser*, 838 F.3d at 912 ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence. This 'cherry-picking' is especially problematic where mental illness is at issue, for 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition.'" (internal citations omitted)). But the ALJ did not explain why he discounted the treatment notes taken during her "worse days."

In sum, ALJ Berigan's decision to discredit Radosevich's symptoms lacks sufficient explanation. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong' meaning it lacks explanation or support." (citing *Murphy v. Colvin*, 759

F.3d 811, 816 (7th Cir. 2014))). On remand, he must explain why he credited certain objective medical evidence while discounting other such evidence, and how those decisions informed his overall conclusion that her symptoms were not as severe as alleged.

**5.     Conclusion**

While the ALJ on remand from the Seventh Circuit was not required to include any specific restrictions in his RFC finding, he *was* required to account for Radosevich's moderate CPP limitation—specifically, her ability to perform a simple task over an extended time. The ALJ purported to do so by restricting Radosevich to simple tasks requiring no more than two hours of concentration. But he failed to explain how he concluded that Radosevich could maintain concentration for two hours, and he failed to build the requisite logical bridge between that restriction and the evidence in the record. Remand is necessary so that the ALJ can explain how restricting Radosevich to two-hour segments of concentration addresses her ability to perform a simple task over an extended time. In explaining his RFC finding in his decision, the ALJ must provide a logical bridge between the moderate CPP limitations identified by doctors—specifically, Drs. Krawiec, Spear, and Snyder—and the restrictions included in his RFC finding. If the ALJ decides to credit certain aspects of those doctors' opinions but not others, he must state so, explain why, and explain how those conclusions impacted his RFC finding.

The ALJ also failed to adequately explain his decision to discredit Radosevich's symptom allegations. Specifically, he did not explain why he credited some treatment notes documenting improved symptoms and positive responses to medication over the contrary evidence, leaving a disconnect between the evidence and his conclusion that Radosevich's symptoms were not severe as alleged. On remand, he must explain why he credited certain objective medical evidence while discounting other such evidence, and how those decisions informed his overall conclusion that her symptoms were not as severe as alleged.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of March, 2023.

WILLIAM E. DUFFIN
U.S. Magistrate Judge